**SO ORDERED.**

**DONE and SIGNED March 22, 2016.**



_____
**JEFFREY P. NORMAN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Barbara J. Webber | § | Case Number: 15-11470 |
| | § | |
| Debtor | § | Chapter 7 |

### ORDER DENYING MOTION FOR SANCTIONS REGARDING VIOLATIONS OF THE DISCHARGE INJUNCTION

This matter is before the Court on the Motion for Sanctions Regarding Violations of the Discharge Injunction (Docket No. 20) filed by the debtor, and the objection (Docket No. 23) thereto filed by LMGH, LLC dba UOwn ("UOwn"). The Court held a hearing on March 8, 2016, and evidence was introduced. For the following reasons, the motion is denied.

1

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This dispute is core under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.),* 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

The Court finds this matter is properly brought as a motion and not as an adversary proceeding. The Court adopts the holding in *Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313 (11th Cir. 2015). In that case, the court held an action to enforce the discharge injunction that was brought as an adversary was improper and should be modified. That court stated the following:

> We conclude with an observation that the form of the instant action was improper and should be modified on remand. "In bankruptcy, adversary proceedings generally are viewed as stand-alone lawsuits," *Dzikowski v. Boomer's Sport's & Recreation Ctr.* (*In re Boca Arena, Inc.*), 184 F.3d 1285, 1286 (11th Cir. 1999) (internal quotation marks omitted), and they "incorporate much of the Federal Rules of Civil Procedure." *Fisher Island Invs.,* 778 F.3d at 1194. The Federal Rules of Bankruptcy Procedure list ten different types of adversary proceedings, none of which is an action to enforce the discharge injunction. See Fed. R. Bankr. P. 7001. A contested matter, conversely, is any litigation resolving an "actual dispute, other than an adversary proceeding, before the bankruptcy court." Fed. R. Bankr. P. 9014 advisory committee's note. Indeed, Federal Rule of Bankruptcy Procedure 9020 specifically provides that "a motion for an order of contempt" is governed by Rule 9014, which relates to contested matters. Thus, "[g]enerally speaking, civil contempt sanctions for the violation of the discharge injunction must be sought by contested matter rather than an adversary proceeding." *Chionis v. Starkus* (*In re Chionis*), No. CC-12-1501, 2013 Bankr. LEXIS 5426, 2013 WL 6840485, at *4 (B.A.P. 9th Cir. Dec. 27, 2013); see *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190 (9th Cir. 2011) (contempt proceedings are always contested matters).

## PROCEDURAL BACKGROUND

The debtor filed this Chapter 7 case on September 12, 2015, and received a discharge on November 30, 2015. In her schedules, the debtor disclosed an unsecured debt owed to UOwn in the amount of $2,632.00. In Schedule G, the debtor also disclosed UOwn as a furniture lease and further stated the following: "DEBTOR REJECTS THIS EXECUTORY LEASE." Post-discharge, UOwn drafted on the debtor's bank account for the rejected lease obligation and the debtor then filed the instant motion for sanctions.

## FACTUAL AND LEGAL ANALYSIS

At the hearing, Karen Foxwell, who is employed by UOwn in its accounting department, testified that UOwn had received both the notice of commencement of the Chapter 7 case as well as the discharge order in the debtor's case. The Court finds Ms. Foxwell's testimony credible. She admitted UOwn violated the discharge injunction on January 4, 2016, and January 19, 2016, by twice drafting on the debtor's checking account post-discharge in the amount of $108.60, for a total of $217.20. At the time of the lease-purchase agreement in 2013, the debtor agreed that UOwn would draft $108.60 semi-monthly on the debtor's bank account at Barksdale Federal Credit Union as the debtor's form of payment. These payments had been drafted on the debtor's account prior to her Chapter 7 filing but ceased when the Chapter 7 was filed due to the automatic stay; unfortunately, however, UOwn resumed drafting after the debtor's discharge. Ms. Foxwell testified that the post-discharge drafts were in error and that UOwn began attempting to correct the error on February 12, 2016, completing the correction on February 19, 2016, when the drafted funds of $217.60 were returned to the debtor's bank account. However, the debtor had already filed the instant motion on February 3, 2016, which was nine days prior to UOwn taking corrective action. The Court believes UOwn's actions in attempting to correct its errors were in response to the instant motion, and not because UOwn independently determined it had violated the discharge

3

injunction, which could have mitigated damages.  Ms. Foxwell testified regarding the remedial actions UOwn has taken to ensure such violations of the discharge injunction do not occur in future bankruptcy cases, but the process previously employed by UOwn prior to such remedial actions easily explains the discharge injunction violations in this case.

In this case, and likely in other bankruptcy cases, UOwn received a notice of the Chapter 7 filing and then manually advanced the semi-monthly payment due date on the debtor's account to January of the next calendar year; however, it had no internal process from removing the debt from its books.  So, UOwn manually extended the debtor's semi-monthly bank draft payments to January 2016.  Unfortunately, UOwn appears to have intentionally not instituted a proper internal process for removing the debt from its accounting records when it finally received the debtor's discharge order.  The debt should have been removed from UOwn's books shortly after the discharge was entered in this case on November 30, 2015.  But, this did not occur.  Thereafter, the improper post-discharge drafts resumed in violation of the discharge injunction.  Based on Ms. Foxwell's testimony, this was a systematic failure across all UOwn's bankrupt accounts.

The debtor's intention in this case was to reject the lease with UOwn.  Accordingly, the debtor's lease obligation to UOwn was discharged and UOwn should have never resumed its bank drafts.  Compounding UOwn's errors were debtor's counsel's actions, which are more fully addressed below.  Debtor's counsel failed to respond to UOwn's three written requests regarding the debtor's intentions on the furniture lease-purchase.  However, the debt was never written off UOwn's books upon the debtor's discharge and the bank drafts resumed in January of 2016.  UOwn is solely at fault for such potential violations of the discharge injunction.  The bank drafts resumed in January of 2016 before the debtor closed her bank account, which she did specifically

to stop the improper bank drafts. Had the debtor not closed her account and filed the instant motion, the drafts would likely have continued unabated.

But for the debtor's conduct, as more fully explained below, UOwn's actions would have violated the 11 U.S.C. § 524 discharge injunction, and the debtor would have been awarded damages and costs including punitive damages pursuant to 11 U.S.C. § 105. Based on the evidence, the Court would likely have awarded actual and punitive damages of $10,000.00 ($5,000.00 per violation) plus an award of attorney's fees of $3,285.00 based on the evidence.[1] While 11 U.S.C.S. § 524 does not expressly authorize monetary damages, bankruptcy courts enforce the discharge injunction by treating violations as civil contempt of court. Bankruptcy courts usually examine the willfulness of a creditor's actions when determining if the discharge injunction has been violated. Sanctions for willful violations of the discharge injunction can include actual damages, attorney's fees, and punitive damages. *See ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006); *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1389–90 (11th Cir. 1996). This Court would have based the damage award on UOwn's willful violation of the discharge injunction, its calculated disregard of 11 U.S.C. § 524, and its general disrespect for the requirements of the Bankruptcy Code. However, for the reasons more fully described below, the debtor's motion is denied and no sanctions or attorney fees are awarded.

UOwn is a furniture financing company, and it does not actually sell or lease furniture. Ms. Foxwell indicated that UOwn has financing agreements with independent furniture stores located throughout Louisiana, as well as other states. In this case, it financed furniture from a

---

[1] The Court applies a "preponderance of the evidence" standard, but the evidenced also supports a "clear and convincing evidence" standard. The appropriate standard of proof has not been determined by all circuit courts of appeal. Compare *In re Zilog, Inc.*, 450 F.3d at 1007 (holding that the correct standard of proof is clear and convincing evidence), with *In re Pratt*, 462 F.3d 14, 21 (1st Cir. 2006) (declining to resolve the question of whether the appropriate standard of proof is clear and convincing evidence or preponderance of the evidence).

5

furniture store for the debtor via a lease-purchase agreement dated July 19, 2013. On that date, the debtor entered into a lease-purchase agreement for the following items from LaRue's Furniture: a queen mattress, box spring, sofa and love seat. These total price for these items was $1,250.00. The lease-purchase agreement obligated the debtor to make 24 semi-monthly payments to UOwn of $108.60 each. The lease payments were to begin on July 31, 2013, and the debtor would have been obligated to pay a total of $2,631.50 by the end of the agreement. No representative of UOwn was present at the time of the sale or delivery of goods. UOwn paid LaRue's Furniture for the goods, taxes and the delivery charge. Upon receipt of the goods, the debtor signed a delivery receipt which was forwarded to UOwn. Thereafter, UOwn confirmed delivery of the goods, reviewed the lease payment terms with the debtor by telephone and began the debtor-authorized bank drafts.

When the debtor entered this transaction, she was in in a pending confirmed Chapter 13 case (Case No. 13-10589). That case was confirmed on June 4, 2013, which was 45 days prior to the debtor entering into the UOwn contract. The confirmation order (Case No. 13-10589, Docket No. 16), which was noticed to all parties including the debtor, specifically provides as follows: "Debtor(s) is required to obtain Court approval prior to entering into any contractual agreement wherein the Debtor(s) buys, sells or leases any automobile, major personal property, real property, Debtor's home or any Debtor's oil, gas mineral interest." The debtor did not receive a discharge in that case; instead, the case was dismissed for non-payment on October 9, 2014.

Based on the Bankruptcy Code, and regardless of the above language in the confirmation order, the debtor was required to obtain court or trustee approval prior to incurring this debt and entering into the agreement with UOwn. The debtor did not obtain such permission. Therefore, the debtor is seeking to enforce the discharge injunction against a debt that she incurred in clear

6

violation of the confirmation order requiring her to obtain permission, as well as the prohibition on Chapter 13 debtors incurring non-emergency debt.

Ms. Foxwell testified that UOwn was not aware of the debtor's Chapter 13 case at the time the agreement was executed. However, a simple credit check or PACER (Public Access to Court Electronic Records[2]) inquiry should have put UOwn on notice of the debtor's Chapter 13 case. Ms. Foxwell testified that UOwn had access to PACER and reviewed schedules filed by *pro se* debtors in other bankruptcy cases. Creditors should not lend to debtors in Chapter 13 proceedings without trustee or court approval. Keith Lundin and Williams Brown's Chapter 13 bankruptcy treatise states the following:

> [1] Before filing, the debtor should be instructed not to borrow money or incur new debt without consulting counsel and seeking the trustee's permission. It will occasionally be necessary for a consumer debtor to incur debt prior to confirmation, for example, emergency medical care or repairs to an automobile. Chapter 13 debtors engaged in business will be even more likely to need credit prior to confirmation.
> [2] Unfortunately, the Bankruptcy Code is less than clear about how a Chapter 13 debtor should go about obtaining credit prior to confirmation. If the debtor is engaged in business, § 1304(b) of the Code empowers the debtor to use § 364 of the Code to obtain credit. Section 364 is quite familiar to Chapter 11 practitioners. It authorizes both unsecured and secured borrowing after notice and a hearing. A Chapter 13 debtor engaged in business would simply file a motion to obtain credit under § 364, describing the terms of the borrowing with notice to all creditors and the trustee.
> [3] A Chapter 13 debtor not engaged in business cannot point to any specific statutory authority for obtaining credit after the petition. Section 364 is worded in terms of "the trustee." Arguably, by negative implication from § 1304(b), only a Chapter 13 debtor engaged in business is authorized by the Code to use the power of a trustee to obtain credit under § 364. Obviously, even Chapter 13 debtors not engaged in business will occasionally need to obtain credit during the Chapter 13 case. There are no reported Chapter 13 decisions categorically refusing to permit nonbusiness debtors to incur debt necessary to the debtor's performance of a plan. Neither are there any decisions that identify any specific statutory authority for a nonbusiness debtor to borrow money before confirmation. But it is true in Chapter 13 programs everywhere that nonbusiness debtors routinely obtain credit for property and services necessary to performance of a plan. Other provisions of the Code contemplate that Chapter 13 debtors will incur new debt during the case. The

---

[2] The PACER service provides on-line access to federal court records and documents nationwide.

failure to empower nonbusiness debtors to use § 364 was probably just an oversight by Congress.

[4] If the new debt is for property or services necessary for the debtor's performance under the plan, the debt may constitute a postpetition claim under 11 U.S.C. § 1305(a), and prior approval by the trustee is necessary if the postpetition claim is to be eligible for allowance or discharge in the Chapter 13 case.

[8] In the event of conversion to Chapter 7, 11 U.S.C. § 348 characterizes most new debt incurred during the Chapter 13 case as if it were prepetition debt. Considered with the special provisions in § 1305 for the filing and allowance of postpetition claims, it is clear that Congress contemplated Chapter 13 debtors would incur new debt before and after confirmation. New debt should be avoided, but when necessary, the debtor should ask permission from the trustee before borrowing and pay the new debt through the plan. Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 92.1, at ¶ 1-4, 8, Sec. Rev. May 5, 2004, www.Ch13online.com.

Judges Lundin and Brown discuss that prior approval by the trustee or court is necessary if the post-petition claim is to be eligible for allowance or discharge in a Chapter 13 case. However, what occurs when a debtor borrows without the approval of the trustee or court as happened in this case? And more importantly, can the debtor seek redress for the violation of a Chapter 7 discharge order when the allegedly discharged debt was improperly incurred in a prior Chapter 13 case? Is there any penalty to this debtor for her failure to seek permission to borrow in her Chapter 13 case? Is a debt incurred without trustee or court permission in a Chapter 13 case a valid debt? Given the lack of trustee or court approval, did the debtor lack the authority to enter into the debt with UOwn? The Court acknowledges that it can find no published cases[3] on these questions.

---

[3] The debtor cites the unreported case of *In re Hall*, Case No. 08-36105, Docket No. 90 (Bankr. S.D. Ohio 2013). This facts in that case are clearly distinguishable from this case. *Hall* involved the acceptance of post-petition fees by a tax resolution agency from the debtor without court approval. The debtor sought to have the funds returned by claiming the agency's receipt of the fees violated the §362 automatic stay. The bankruptcy court held that § 362(a) does not apply to *voluntary* payments made by the debtor to a third party. In fact, that court held that "it is not within the spirit of the Bankruptcy Code to allow the Debtors to ignore their own responsibilities when incurring post-petition debt for services and then permit them to use the stay as a sword to take back payment for those services when they change their mind and/or become dissatisfied." *Id*. This holding actually supports this Court's position in this case.

Certainly in some instances, a debt incurred without trustee or court permission in a Chapter 13 case is a valid debt. 11 U.S.C. § 1305(a) demonstrates this by providing that "[a] proof of claim may be filed by any entity that holds a claim against the debtor…that is a consumer debt that arises after the date of the order for relief under this chapter, and that is for property of services necessary for the debtor's performance under the plan." In fact, § 1305(b) recognizes a narrow class of post-petition debts that are allowable as post-petition claims, and which may be allowed or disallowed under 11 U.S.C. § 502 "as if such claim had arisen before the date of the filing of the petition." Not all debts can be timely approved by the trustee or the court—for example, a debtor's emergency medical bill. A rule that a medical bill due to a true emergency incurred by a debtor in a Chapter 13 is invalid would be absurd. Judges Lundin and Brown stated that "[t]he allowance of postpetition claims for consumer debts for property or services necessary for the debtor's performance under the plan is conditioned that consent of the Chapter 13 trustee must be obtained before incurring the debt, **if practicable.**" Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 302.1, at ¶ 9, Sec. Rev. June 17, 2004, www.Ch13online.com. It would not be practicable to obtain Chapter 13 trustee or court consent to incur an emergency medical debt.

However, other debts not pre-approved by the court or trustee are less easily classified. For example, as opposed to an emergency medical debt, a debt for a luxury car purchase without trustee or court approval would clearly not be "necessary for the debtor's performance under the plan," and such unapproved debt would have violated the confirmation order which required court or trustee approval. There is no justification for a debtor not to obtain the consent of the trustee or court before incurring this type of debt. A debtor would simply lack authority to enter into

9

such a debt for the purchase of a luxury vehicle, and a debtor's actions would have violated the terms of the confirmation order and other Chapter 13 requirements.

While the debt in this case falls between the two extremes described above (an emergency medical debt vs. debt for luxury automobile), the Court concludes the debtor violated the terms of the confirmation order in the Chapter 13 case. A holding otherwise would render the terms of that confirmation order meaningless. The provisions in orders this Court enters serve explicit purposes (this Court does not enter meaningless orders). The confirmation order, which explicitly contained the provision requiring court or trustee approval for a debtor incurring non-emergency debt, was entered only 45 days prior to the debtor entering into the unauthorized agreement. Additionally, that order was served on all parties, including the debtor. Therefore, the Court must conclude the debtor had notice of the restriction and willfully failed to abide by it. Fault lies with both the debtor and creditor. The debtor violated the aforementioned provision in the confirmation order. But, UOwn is also at fault as it did not take even rudimentary steps to determine whether the debtor was in a pending bankruptcy. This opinion should serve as a warning to debtors **and** creditors that this Court will not enforce debts incurred in violation of bankruptcy rules or the confirmation order.

The debtor contends that 11 U.S.C. § 349, which defines the effects of dismissal of a Chapter 13 case, suggests that dismissal of the debtor's Chapter 13 case prior to discharge renders the situation as though the bankruptcy never existed. In effect, the debtor argues that, because it vacates the confirmation order,[4] the fact that the Chapter 13 case was dismissed validates the debtor's improperly incurred debt. According to the debtor, the restrictions on incurring debts

---

[4] While there may be dispute regarding funds in the possession of the Chapter 13 trustee at dismissal, almost all courts hold that dismissal after confirmation vacates the confirmation order. *Nash v. Kester (In re Nash)*, 765 F.2d 1410 (9th Cir. 1985); *Elliott v. ITT Corp.*, 150 B.R. 36, 40 (N.D. Ill. 1992).

10

15-11470 - #33  File 03/22/16  Enter 03/23/16 14:03:47  Main Document  Pg 10 of 14

contained in the confirmation order and the Bankruptcy Code would no longer exist. The Court does not accept this simplified view of 11 U.S.C. § 349. Dismissal does not necessarily prevent preclusion in subsequent litigation based on decisions during the Chapter 13 case. *See, e.g., Arneson v. Farmers Insurance Exchange* (*In re Arneson*) 282 B.R. 883 (B.A.P. 9th Cir. 2002).

Additionally, and importantly, courts of equity often infer a rule of law that a person coming to court with a lawsuit or petition for a court order must have "clean hands" and not have engaged in unfair or improper conduct with regard to the subject matter of the claim. The debtor's decision not to obtain the required approval for incurring debt in her Chapter 13 case is relevant to the instant motion for sanctions. The debtor has violated the "clean hands doctrine" because she failed to obtain approval for incurring the debt in question in her prior Chapter 13 case. It is a settled rule that one seeking equity must have "clean hands."

Also, this Court has entered a standing order[5] which authorizes an expedited process for debtors to obtain permission to incur debt while in a Chapter 13 case. This process is important because it is integral to debtors successfully completing Chapter 13 plans and receiving a discharge. This order allows for expedited consideration by the Chapter 13 Trustee of a debtor's request to incur non-emergency debt through a simple application. The Trustee has the authority to grant or deny such applications. If anything, Judge Lundin underestimates the frequency of debtors desiring to incur such debts. In this division, these kinds of requests are fairly common, especially requests to incur debt for transportation. The Chapter 13 Trustee can review and approve or deny these applications on an expedited basis without unnecessary court intervention. If the application is approved, the debtor is authorized to incur the debt with the terms and conditions therein without the need for a court order pursuant to 11 U.S.C. § 1305(c). Should the

---

[5] Standing Order Adopting Procedure for Obtaining Credit in Chapter 13 Cases effective September 1, 2015.

11

Trustee deny an application, which may happen for any number of reasons, the debtor then has the option of filing an application for consideration by the Court. However, the standing order **prohibits a debtor from incurring non-emergency consumer debt during the pendency of the Chapter 13 case without trustee or court approval**.

The Court is also compelled to comment on the debtor's counsel's actions, or lack thereof. Debtor's counsel's actions fall below the professional standards expected of attorneys in Chapter 7 cases. It appears that UOwn's errors, while not excusable, were compounded by the total lack of regard by the debtor's attorney to his professional duties. The debtor entered into evidence three letters mailed from Karen Foxwell of UOwn to debtor's counsel during the pendency of the debtor's case. Debtor Ex. 4. Each letter made certain specific and simple requests of debtor's counsel such as the following: "Can you please email me at karenf@mnghllc.com and let us know what her [the debtor's] attentions are regarding the lease contract"; "[w]e wrote to you three weeks ago…and have not heard back from you"; "[w]e wrote to you regarding the above referenced client 3 and 8 weeks ago; and "[i]f you could please email me at Bankruptcy@UownOnline.com and let us know what her [the debtor's] intentions are regarding the lease contract it would be appreciated." Debtor's counsel did not respond to any of these letters. A response would have taken less than 10 minutes, particularly if such response was by email, yet counsel remarkably did not respond in any way. This is not acceptable behavior, and counsel's argument that he is inundated with such creditor requests is completely baseless and without merit.[6]

Equally important was the debtor's testimony. She testified that she had **never seen these letters**. It should be common practice for attorneys to forward copies of letters such as these to

---

[6] These conclusions are based on this Judge's personal experience. Over 26 years of bankruptcy practice prior to appointment to the bench, this Judge filed more than 3,000 consumer Chapter 7 cases.

12

their clients. The Court reminds counsel of his professional duty under the Louisiana Rules of Professional Conduct 1.4 which provides the following:

> (a) A lawyer shall:
> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
> **(3) keep the client reasonably informed about the status of the matter;**
> **(4) promptly comply with reasonable requests for information; and**
> (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law **[emphasis provided].**

Debtor's counsel's actions clearly fall below Louisiana Rule of Professional Conduct 1.4. It does not appear counsel kept his client reasonably informed about the status of her case. He also did not promptly respond to UOwn's reasonable request regarding the debtor's intent with regards to the UOwn lease-purchase agreement.

## CONCLUSION

The debtor may not bring an action for violation of the discharge injunction based on her violation of this Court's confirmation order in her prior Chapter 13 case, as well as the general restrictions on borrowing in Chapter 13 cases. Therefore, the Court declares the debt between the debtor and UOwn void because the debtor lacked authority to enter into the debt. Additionally, the debtor has "unclean hands." All debtors must seek permission to borrow in non-emergency situations in Chapter 13 cases or they risk the adverse consequences for their failure to do so. Such is the case here.

Because the subject debt is being declared void by this Court, the debtor may not be awarded sanctions from UOwn for any violation of the discharge injunction. Prior to the filing of the debtor's current Chapter 7 petition, there was no debt between the debtor and UOwn for

13

15-11470 - #33  File 03/22/16  Enter 03/23/16 14:03:47  Main Document  Pg 13 of 14

the reasons stated. Therefore, the debt was non-existent and could not be discharged. Accordingly, no violation of the 11 U.S.C. § 524 discharge injunction occurred. Still further, the debtor has violated the "clean hands" doctrine. Accordingly, UOwn has not violated the discharge injunction, and no sanctions or damages will be awarded.

        **THEREFORE, IT IS ORDERED** that the Motion for Sanctions Regarding Violations of the Discharge Injunction is denied.

###